1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   STEVEN R. FLOYD,            )  Civil No.   08-1975-LAB(WVG)
                                 )
12               Plaintiff,      )  REPORT AND RECOMMENDATION
                                 )  GRANTING PLAINTIFF'S MOTION
13   v.                          )  FOR SUMMARY JUDGMENT
                                 )  (DOC. # 13) AND
14   MICHAEL J. ASTRUE, Commissioner )  DENYING DEFENDANT'S CROSS-
     of Social Security,         )  MOTION FOR SUMMARY JUDGMENT
15                               )  (DOC. # 15)
                 Defendant.      )
16                               )
     _____ )

17

18                     **STATEMENT OF THE CASE**

19        On February 7, 2006, Steven Floyd (hereinafter "Plaintiff")

20   applied for disability insurance benefits and supplemental security

21   income benefits under Title XVI of the Social Security Act.  (Tr. at

22   125-127.)   The Commissioner denied the application both initially

23   and upon reconsideration.  On October 24, 2008, Plaintiff filed this

24   action  pursuant  to  section  405(g)  of  the  Social  Security  Act

25   ("Act"),  42  U.S.C.  §  1383(c)(3),  to  obtain  judicial  review  of  a

26   "final  decision"  of  the  Commissioner  of  the  Social  Security

27   Administration  ("Commissioner")  denying  his  claim  for  Disability

28   Insurance  Benefits  and  Supplemental  Security  Income  disability

08cv1975

1    benefits under Titles II and XVI of the Act.  Defendant filed an

2    Answer to the Complaint on July 10, 2009.  The District Court

3    referred the matter to this Court for Report and Recommendation

4    pursuant to 28 U.S.C. § 636(c).  On September 18, 2009, plaintiff

5    filed a Motion for Summary Judgment.  On October 21, 2009, defendant

6    filed a Cross-Motion for Summary Judgment along with an Opposition

7    to Plaintiff's Motion.  This matter is now before the Court.

8                           **STATEMENT OF FACTS**

9        Plaintiff was born on June 26, 1958.  (Tr. at 14, 125.)  At

10   the time of the hearing, Plaintiff was 49 years old.  Plaintiff has

11   past work experience as a sexton[1].  (Tr. at 185-186.)

12       On June 3, 2005, treating physician Raymond Fink, M.D.,

13   reported Plaintiff's diagnosis of congenital adrenal hyperplasia[2]

14   resulting from adrenal insufficiency[3], and that Plaintiff was

15   treated with Hydrocortisone[4] and Fluorinef[5].  (Tr. at 197.)  Dr.

---

[1]    A sexton is an employee or officer of a church who is responsible for the care and upkeep of church property. (http://dictionary.reference.com).

[2]    Congenital Adrenal Hyperplasia (CAH) refers to a group of disorders that result from the impaired ability of the adrenal glands to produce vital steroid hormones (corticosteroids).  Fundamentally, CAH is due to genetic defects (mutations) in the genes controlling the manufacture of the enzymes necessary to produce the hormones of the adrenal cortex. (www.webmd.com).

[3]    Plaintiff is diagnosed with Addison's Disease.  Addison's Disease develops when the adrenal glands, which are above the kidneys, are not able to make enough of the hormones cortisol, and sometimes aldosterone. (www.webmd.com).

[4]    Hydrocortisone is a steroid hormone used to treat Addison's Disease. (www.webmd.com).

[5]    Fluorinef is used to treat low glucocorticoid levels caused by disease of the adrenal gland. (www.webmd.com).

08cv1975

Fink also reviewed medical records from UCSD and noted chronic joint pain, possibly related to fibromyalgia[6]. Dr. Fink based his opinion on the two office visits in April 2005, and a review of Plaintiff's medical records from UCSD. Dr. Fink concluded that the combination of muscle and joint pain and chronic fatigue made Plaintiff unemployable. (Id.) He also noted that Plaintiff's Addison's disease was currently under stable control with medication. (Id.)

On August 31, 2006, treating physician Brian First, M.D., completed a Physical Residual Functional Capacity Questionnaire. Dr. First confirmed Plaintiff's diagnoses of congenital adrenal hyperplasia resulting from adrenal insufficiency, asthma with shortness of breath, and osteoporosis secondary due to steroid use. (Tr. at 263.) Dr. First opined that Plaintiff's symptoms were severe enough to frequently interfere with Plaintiff's concentration, persistence, and pace in performing even simple work tasks. (Id.) Additionally, Dr. First opined that Plaintiff could lift ten pounds frequently in a competitive work environment and sit, stand, or walk for approximately 2 hours. (Id.) Dr. First further opined that Plaintiff would need to take unscheduled breaks approximately every 1-2 hours, and would need to rest 20 minutes before returning to work. Dr. First concluded that Plaintiff could manage a desk job for 2-4 hours a day. (Tr. at 264.)

On October 13, 2006, Dr. Taylor-Holmes, the State agency physician, preformed a file review and opined that Plaintiff's impairments were non-severe. (Tr. at 256.)

---

[6] Fibromyalgia is a non-life-threatening, chronic disorder of the muscles and surrounding soft tissue, including ligaments and tendons. Its main symptoms are muscle pain, fatigue, sleep disturbances, and tender points at certain parts of the body. (www.webmd.com).

08cv1975

1    On April 12, 2007, David Polster, M.D., reported that
2    Plaintiff had a history of rest and exertional dyspnea[7] and a
3    persistent cough. (Tr. at 267.) Dr. Polster administered a
4    pulmonary function test, which found Plaintiff's static lung volumes
5    were within normal values, his carbon monoxide single breath
6    diffusing capacity was mildly reduced, and he had premature airway
7    closure. (Id.) Additionally, Dr. Polster reported a moderate
8    expiratory airflow obstructive defect, which was partially revers-
9    ible. (Id.)

10   On June 27, 2007, Dr. First subsequently reported that
11   Plaintiff complained of left shoulder pain. (Tr. at 281-282.) A
12   radiology report of Plaintiff's left shoulder revealed mild
13   acromioclavicular osteoarthritic[8] changes, with an otherwise
14   unremarkable study. (Tr. at 282.)

15   On August 28, 2007, John R. Morse, M.D. provided expert
16   testimony at the administrative hearing. (Tr. at 47-50.) Dr. Morse
17   reviewed the evidence and records at the administrative hearing.
18   (Tr. at 47.) He testified that Plaintiff had two main impairments:
19   Addison's disease and chronic obstructive pulmonary disease[9]. (Id.)

---

21   [7]    Dyspnea is defined as an uncomfortable awareness of breathing. It is
22   a subjective experience involving many factors that modulate the
     quality and intensity of its perception. Patients with comparable
23   degrees of functional lung impairment and disease burden may
     describe varying intensities of dyspnea. (www.webmd.com).

25   [8]    Osteoarthritis, also known as degenerative joint disease, occurs
     when the cartilage that covers the tops of bones, known as articular
26   cartilage, degenerates or wears down. This causes swelling, pain,
     and sometimes the development of osteophytes (bone spurs) when the
     ends of two bones rub together. (www.webmd.com).

28   [9]    Chronic Obstructive Pulmonary Disease, or COPD is a long-term
     lung disease that refers to both chronic bronchitis and
     emphysema. (www.webmd.com).

4

1    Dr. Morse concluded that Plaintiff's impairments, alone or in
2    combination, did not meet or medically equal any listing in 20
3    C.F.R. Part 404, Subpart P, Appendix 1, Part A.  (Tr. at 50.)  Dr.
4    Morse also concluded that Plaintiff retained the residual functional
5    capacity to: lift and/or carry 50 pounds occasionally and 25 pounds
6    frequently; stand and/or walk about 6 hours in an 8-hour day; and
7    sit about 6 hours in an 8-hour day. (Tr. at 51.) Finally, Dr. Morse
8    concluded Plaintiff must avoid concentrated exposure to extreme
9    cold, extreme heat, wetness, humidity, fumes, odors, dusts, gases,
10   and poor ventilation.  (Tr. at 52.)

11        Vocational expert Mark Remus also testified at the hearing.
12   (Tr. at 58.)  Mr. Remus opined that if Plaintiff was limited to the
13   functional capacity as recommended by Dr. Morse, Plaintiff could
14   perform his past relevant work as a sexton/janitor. (Tr. at 58.)
15   However, Mr. Remus opined that if Plaintiff was limited to the
16   functional capacity as recommended by Dr. First, Plaintiff would be
17   unable to perform his past work, and it was very unlikely that he
18   would be able to sustain other work. (Tr. at 61-62.)

19                          **LEGAL STANDARD**

20        To qualify for disability benefits under the Social Security
21   Act, an applicant must show that: (1) he or she suffers from a
22   medically determinable impairment that can be expected to result in
23   death or that has lasted or can be expected to last for a continuous
24   period of twelve months or more; and (2) the impairment renders the
25   applicant incapable of performing the work that the applicant
26   previously performed and incapable of performing any other substan-
27
28

08cv1975

1   tially gainful employment that exists in the national economy.   <u>See</u>

2   42 U.S.C. § 423(d)(2)(A).   The claimant's impairment must result

3   from "anatomical, physiological, or psychological abnormalities

4   which are demonstrable by medically acceptable clinical and

5   laboratory diagnostic techniques."   <u>Drouin v. Sullivan</u>, 966 F.2d

6   1255, 1257 (9th Cir. 1992).

7        The Social Security Regulations ("Regulations") employ a five

8   step process to determine whether an applicant is disabled under the

9   Act.   If an applicant is found to be "disabled" or "not disabled" at

10  any step, there is no need to proceed to the subsequent steps.   <u>See</u>

11  Federal Old-Age, Survivors and Disability Insurance (1950-1999), 20

12  C.F.R. § 404.1520 (1999).   The applicant bears the burden of proof

13  as to the first four steps.   <u>Id.</u>   If the fifth step is reached, the

14  burden shifts to the Commissioner.   <u>Id.</u>

15        The five steps are as follows:

16             Step 1.   Is the claimant presently working

17        in a substantially gainful activity?  If so, then the

18        claimant is "not disabled" within the meaning of the

19        Social Security Act and is not entitled to disability

20        insurance benefits.  If the claimant is not working in

21        a substantially gainful activity, then the claimant's

22        case cannot be resolved at step one, and the evalua-

23        tion proceeds to step two.

24             Step 2.   Is  the  claimant's impairment

25        severe?  If not, then the claimant is "not disabled"

26        and is not entitled to disability benefits.  If the

27        claimant's impairment is severe, then the claimant's

28        case cannot be resolved at step two, and the evalua-

08cv1975

1    tion proceeds to step three.

2           Step 3.  Does the impairment "meet or
3    equal" one of the list of specific impairments
4    described in the regulations?  If so, the claimant is
5    "disabled" and therefore entitled to disability
6    insurance benefits.  If the claimant's impairment
7    neither meets nor equals one of the impairments listed
8    in the regulations, then the claimant's case cannot be
9    resolved at step three, and the evaluation proceeds to
10   step four.

11          Step 4.  Is the claimant able to do any
12   work that he or she has done in the past? If so, then
13   the claimant is "not disabled' and is therefore not
14   entitled to disability insurance benefits.  If the
15   claimant cannot do any work he or she did in the past,
16   then the claimant's case cannot be resolved at step
17   four, and the evaluation proceeds to the fifth and
18   final step.

19          Step 5.  Is the claimant able to do any
20   other work?  If not, then the claimant is "disabled"
21   and therefore entitled to disability insurance
22   benefits.  If the claimant is able to do other work,
23   then the Commissioner must establish that there are a
24   significant number of jobs in the national economy
25   that claimant can do.  There are two ways for the
26   Commissioner to meet the burden of showing that there
27   is other work in "significant numbers" in the national
28   economy that claimant can do: (1) by the testimony of

08cv1975

1   a vocational expert, or (2) by reference to the

2   Medical-Vocational Guidelines . . . . If the Commis-

3   sioner meets this burden, the claimant is "not

4   disabled" and therefore not entitled to disability

5   insurance benefits.  If the Commissioner cannot meet

6   this burden, then the claimant is "disabled" and

7   therefore entitled to disability insurance benefits.

8   <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999)(footnotes

9   and citations omitted).

10      Section 405(g) of the Act allows unsuccessful applicants to

11  seek judicial review of a final agency decision of the Commissioner.

12  42 U.S.C. § 405(g).  The scope of judicial review is limited.  The

13  Commissioner's denial of benefits "will be disturbed only if it is

14  not supported by substantial evidence or is based on legal error."

15  <u>Brawner v. Sec'y of Health and Human Servs.</u>, 839 F.2d 432, 433 (9th

16  Cir. 1988)(citing <u>Green v. Heckler</u>, 803 F.2d 528, 529 (9th Cir.

17  1986)).

18      Substantial evidence means "more than a mere scintilla" but

19  less than a preponderance.  <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980

20  (9th Cir. 1997)(citation omitted).  "[I]t is such relevant evidence

21  as a reasonable mind might accept as adequate to support a conclu-

22  sion."  <u>Id.</u> (quoting <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th

23  Cir. 1995)).  The court must consider the record as a whole,

24  weighing both the evidence that supports and detracts from the

25  Commissioner's conclusions.  <u>See Desrosiers v. Sec'y of Health &</u>

26  <u>Human Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988).  If the evidence

27  supports more than one rational interpretation, the court must

28  uphold the Administrative Law Judge's [hereinafter "ALJ"] decision.

08cv1975

1  <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir. 1984).  When the

2  evidence is inconclusive, "questions of credibility and resolution

3  of conflicts in the testimony are functions solely of the Secre-

4  tary."  <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982).

5      Even if the reviewing court finds that substantial evidence

6  supports the administrative law judge's conclusions, the court must

7  set aside the decision if the ALJ failed to apply the proper legal

8  standards in weighing the evidence and reaching his or her decision.

9  <u>See</u> <u>Benitez v. Califano</u>, 573 F.2d 653, 655 (9th Cir. 1978).  Section

10 405(g) permits a court to enter a judgment affirming, modifying, or

11 reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The

12 reviewing court may also remand the matter to the Social Security

13 Administrator for further proceedings.  <u>Id.</u>

14                          **<u>DISCUSSION</u>**

15      **I.  <u>The ALJ's Decision</u>**

16      In a written decision dated February 26, 2008, the ALJ

17 concluded that plaintiff was not disabled as defined under the

18 Social Security Act, and was therefore not eligible for disability,

19 disability insurance benefits or supplemental security income. (Tr.

20 at 21).  The ALJ specifically found the following:

21 1.    At the August 28, 2007 administrative hearing, the

22       court amended the claimant's alleged disability onset

23       date to January 30, 2006.

24 2.    The amendment of claimant's alleged disability onset

25       date to January 30, 2006 is appropriate in light of

26       Title XVI eligibility.

27 3.    The claimant has not engaged in substantial gainful

28       activity since his amended alleged disability onset

08cv1975

1       date of January 30, 2006.

2   4.  The claimant suffers from the following medically

3       determinable severe impairments: Addison's disease and

4       chronic obstructive pulmonary disease.

5   5.  The claimant's impairments, alone or in combination,

6       have not met or equaled the requirements of any listing

7       in 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A

8       (Listing of Impairments), since his amended alleged

9       disability onset date.

10  6.  Since January 30, 2006, the claimant has had the

11      following residual functional capacity: lift and/or

12      carry 50 pounds occasionally and 25 pounds frequently;

13      stand and/or walk about six hours and sit about six

14      hours in an eight hour workday; no postural limita-

15      tions, and must avoid concentrated exposure to extreme

16      cold, and extreme heat, wetness, humidity, and fumes,

17      odors, dusts, gases, and poor ventilation.

18  7.  The claimant's allegations of disabling pain, symptoms,

19      and limitation considered pursuant to the law of the

20      Ninth Circuit Court of Appeals, Social Security Rulings

21      96-3p and 96-7p, and pertinent regulations, are not

22      credible and are rejected for the reasons stated in the

23      rationale portion of this decision.

24  8.  The claimant has past relevant work history as: [sic]

25      a sexton.

26  9.  The claimant's past relevant work as a sexton is not

27      precluded by the claimant's residual functional capac-

28      ity and can be performed by the claimant as actually

08cv1975

1    performed or as customarily performed in the national
2    economy.  This is in accordance with the testimony of
3    the vocational expert.

4   10.   The claimant was 47 years old on this amended alleged
5    disability onset date and is currently 49 years of age;
6    at all relevant times, he is considered a younger
7    individual.

8   11.   The claimant has a high school education; such educa-
9    tion is defined as high school and above.

10   12.   The claimant's education and training do not permit
11    direct entry into skilled work.

12   13.   The claimant has no skills acquired from his past
13    relevant work that are transferable to other Work
14    [sic].

15   14.   In the alternative, considering the claimant's age,
16    education, past relevant work experience, and
17    extertional residual functional capacity, Medical
18    Vocational Guideline 203.28 directs a finding of not
19    disabled.

20   15.   Used as a framework for decision making, Medical-
21    Vocational Guideline 203.28, 20 C.F.R., Part 404,
22    Subpart P, Appendix 2, recommends a finding that a
23    hypothetical individual of the claimant's age, educa-
24    tion, work experience, and residual functional capacity
25    is not disabled since the erosion effect of the claim-
26    ant's nonexertional limitations on the occupational
27    base presumed to exist 203.28 [sic] is significant; yet
28    nevertheless, a significant number of jobs remain in

08cv1975

1              the rule's occupational base.

2    16.    The claimant has been able to perform his past relevant

3           work as a sexton, as well as perform and sustain jobs

4           that constitute substantial gainful activity and exist

5           in  significant  number  in  the  national  or  regional

6           economy since his amended alleged disability onset date

7           of January 30, 2006.

8    17.    The  claimant  has  not  been  under  a  "disability,"  as

9           defined in the Social Security Act, at any time since

10          his  amended  alleged  disability  onset  date  of  January

11          30, 2006.

12         The ALJ reviewed the medical records submitted and considered

13   the testimony presented.  Based on that review, the ALJ rejected the

14   report submitted by Plaintiff's treating physician, Dr. First.  (Tr.

15   at 17.)  Instead, the ALJ adopted the findings of the non-treating

16   medical  expert,  Dr.  Morse.  (Tr.  at  16.)  The  ALJ  also  rejected

17   Plaintiff's testimony regarding allegations of pain and fatigue due

18   to  steroid  use.   (Tr.  at  18.)  A  vocational  expert  also  testified

19   that  Plaintiff's  ability  to  work  would  depend  on  which  doctor's

20   opinion was accepted. (Tr. at 58-61.)

21         The  vocational  expert  testified  that  based  on  the  functional

22   limitations  provided  by  Dr.  Morse,  Plaintiff  could  return  to  his

23   past work as a sexton.  (Tr. at 58.)  However, the vocational expert

24   also testified that based on the functional limitations provided by

25   Dr.  First,  Plaintiff  would  not  be  able  to  return  to  work.  (Tr.  at

26   61.)  The ALJ agreed with the vocational expert's testimony based on

27   Dr. Morse's testimony regarding residual functional capacity.  (Tr.

28   at 20.)

08cv1975

1    Based on these findings, the ALJ concluded that Plaintiff was

2    not disabled as defined in the Social Security Act. (Id. at 142.)

3    **II.   Analysis**

4    Plaintiff contends that the ALJ erred by (a) rejecting

5    Plaintiff's testimony regarding pain and functional limitation; and

6    (b) rejecting Plaintiff's treating physician's opinion of disability

7    and functional residual capacity.

8    **A.   Rejection of Plaintiff's Testimony**

9    Plaintiff testified at the hearing that he is unable to

10   perform his past work because he lacked strength and stamina. (Tr.

11   at 36-37.)  Plaintiff testified that his symptoms were caused by

12   long term steroid use prescribed to treat his Addison's disease and

13   his difficultly breathing. (Id.)  Additionally, Plaintiff stated

14   that he has problems with his right heel due to bone spurs which

15   required casting by a podiatrist in the fall of 2006. (Tr. at 42.)

16   Plaintiff testified that his right heel was in pain every time he

17   walked, and that the pain felt "like a knife ... sticking to you."

18   (Tr. at 42-43.)  Plaintiff estimated that he could only carry ten

19   pounds and could stand two to three hours during a normal work day.

20   (Tr. at 43.)

21   \\

22   \\

23   \\

24   1. Legal Standard

25   When evaluating a claimant's subjective symptom testimony,

26   the ALJ must perform two stages of analysis: the Cotton[10] test and

27

28   _____

     [10]    In Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986), the court set out
             a threshold test for evaluating symptom testimony.

08cv1975

1   an analysis of Plaintiff's credibility.  <u>Smolen v. Chater</u>, 80 F.3d

2   1273, 1281-82 (9th Cir. 1996).  The <u>Cotton</u> test requires the ALJ to

3   determine whether the claimant has produced objective medical

4   evidence of an underlying impairment and whether the symptoms

5   alleged could reasonably be produced by the impairment.  <u>Bunnell v.</u>

6   <u>Sullivan</u>, 947 F.2d 341, 346-47 (9th Cir. 1991).  If the claimant

7   meets the <u>Cotton</u> test, and there is no evidence of malingering, the

8   ALJ must offer specific, clear and convincing reasons to reject

9   Plaintiff's symptom testimony.  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918

10  (9th Cir. 1993).

11          *2. Analysis*

12          The ALJ found that Plaintiff satisfied the <u>Cotton</u> test

13  because he presented objective medical evidence that could reason-

14  ably produce his self-reported symptoms.  The ALJ determined that

15  Plaintiff suffered from chronic obstructive pulmonary disease and

16  Addison's disease. (Tr. at 16.) Several doctors diagnosed Plaintiff

17  with Addison's Disease.  (Tr. at 197, 263.) To treat his adrenal

18  insufficiency, Plaintiff was prescribed two steroid medications,

19  Hydrocortisone and Fluorinef. (Tr. at 197.)  Dr. First, Plaintiff's

20  treating physician, found that there are side effects from Plain-

21  tiff's long term use of steroid medication.  (Tr. at 263.)  Further,

22  Dr. First diagnosed Plaintiff with osteoporosis due to steroid use

23  and asthma. (<u>Id.</u>) Therefore, Plaintiff provided objective medical

24  evidence of an underlying impairment, that is, his Addison's disease

25  and the medicine used for its treatment, asthma, and osteoporosis

26  due to steroid use.

27          Plaintiff met the <u>Cotton</u> test, and the ALJ made no finding

28  that Plaintiff was malingering, nor did any of the presented

08cv1975

evidence suggest that he was doing so.  Therefore, the ALJ may reject Plaintiff's testimony only if he provides clear and convincing reasons.  <u>Smolen</u>, 80 F.3d at 1282-84 (citation omitted).  Some factors the ALJ may consider to determine the credibility of Plaintiff's testimony include: 1) the claimant's reputation for lying, prior inconsistent statements and other testimony from the plaintiff that appears less candid; 2) unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment; or 3) claimants daily activities. (<u>Id</u>. at 1284.) The ALJ's determination or decision must contain specific reasons for findings on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.  <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 1989).

Here, the ALJ rejected Plaintiff's testimony for two reasons. First, the ALJ found that Plaintiff's own testimony conflicted with his self-report of pain and functional limitation.  (Tr. at 17-18.) The ALJ stated that "the overall evidence suggests that claimant has the ability to care for himself and maintain his mother's home" and "performance of the claimant's daily activities as described is not inconsistent with the performance of many basic work activities." (Tr. at 18.)  Second, the ALJ noted that Plaintiff could "drive, help his mother prepare meals, vacuum, and feed the dogs, cat and fish." (Tr. at 18.)

However, Plaintiff's self-reported functional limitation of lifting less than ten pounds and standing only one to two hours is entirely consistent with Plaintiff's self reported activities, which

include driving, preparing meals, occasional vacuuming, and feeding the dogs, cat, and fish. (Tr. at 43.) Plaintiff's ability to complete these simple activities does not amount to clear and convincing evidence that the Plaintiff's testimony regarding his fatigue and functional limitation is not credible. It is not reasonable for the ALJ to construe this testimony, absent any other evidence, as contrary to Plaintiff's self-reported pain, fatigue and functional limitation.

Defendant cites Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995), to support the rejection of Plaintiff's testimony based on daily activity. However, Orteza is factually distinguishable from this case. In Orteza, the treating physician was "quite emphatic in his report about the lack of objective evidence to support the claimant's complaints of pain and weakness." Id. at 750. The ALJ in Orteza noted that the claimant suffered no side effects from the prescription drugs he takes, and that the claimant had not required prescription pain medication. Id. Here, Plaintiff's treating physician, Dr. First, supports Plaintiff's self-reported functional limitation. Unlike the treating physician in Orteza who found no objective evidence of the claimant's pain, here, Dr. First supports Plaintiff's self-report of fatigue and lack of stamina. Dr. First specifically noted these symptoms are due to long term steroid use. (Tr. at 263.) Additionally, Plaintiff suffers bone spurs which are reasonably related to his long term use of prescription steroids. (Id.) Plaintiff presented the ALJ with objective evidence of pain, supported by his physician's testimony, and it was not reasonable for the ALJ to reject Plaintiff's testimony. Therefore, the ALJ failed to provide a clear and convincing reason for rejecting

08cv1975

1   Plaintiff's testimony of self-reported pain and functional limita-
2   tion.

3       Defendant argues that the ALJ properly rejected Plaintiff's
4   testimony due to his poor work history. The ALJ found that since
5   1992, Plaintiff's work history shows that he has held only one job
6   for three months prior to the alleged disability onset date in 2006.
7   The ALJ noted that Plaintiff's prior work history "raises a question
8   as to whether the claimant's continuing unemployment is actually due
9   to medical impairments." (Tr. at 18.) Defendant cites Thomas v.
10  Barnhart, 278 F.3d at 958-959, to support prior work history as a
11  reason to discredit Plaintiff's testimony. However, Thomas is
12  factually distinguishable from the current dispute. In Thomas, the
13  ALJ gave clear and convincing reasons for discounting the claimant's
14  testimony. In addition to finding that the claimant had an "ex-
15  tremely poor work history," the ALJ also found no objective medical
16  evidence to support the claimant's descriptions of her pain and
17  limitations, and the claimant had "not been a reliable historian,
18  presenting conflicting information about her drug and alcohol
19  abuse.'" Id. at 959-60. Here, the ALJ relied solely Plaintiff's
20  spotty prior work history to discredit him. However, Plaintiff's
21  work history, without any other evidence establishing, or even
22  suggesting, lack of credibility, is insufficient to support a
23  determination that Plaintiff's self-report of pain and limitation
24  is not credible. Unlike the volume of conflicting evidence presented
25  in Thomas, here, the ALJ's credibility determination is unsupported.
26  Therefore, the ALJ did not present clear and convincing reasons to
27  reject Plaintiff's testimony.

28          3. *Conclusion*

17

08cv1975

The ALJ improperly rejected Plaintiff's testimony regarding his pain, fatigue and functional limitations. Plaintiff's ability to complete simple daily activities is insufficient evidence to conclude that Plaintiff's testimony regarding his fatigue and functional limitation is not credible. Further, Plaintiff's limited prior work history, without any other evidence establishing lack of credibility, is insufficient to determine that Plaintiff's self-report of pain and limitation were not credible. Where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be disabled if his testimony were credited, "we will not remand solely to allow the ALJ to make specific findings regarding that testimony." _Varney v. Sec'y of Health and Human Services_, 859 F.2d 1396, 1401 (9th Cir. 1995). The ALJ failed to state clear and convincing reasons for rejecting Plaintiff's self-reported pain and functional limitations. There-fore, Plaintiff's testimony should be accepted as credible.

### B.   Treating Physician's Opinion

Plaintiff argues that the ALJ failed to accord adequate weight to, and explain his rejection of, the opinions of Dr. First, Plaintiff's treating physician. (Pl.'s Motion at 6.) Additionally, Plaintiff argues that the ALJ failed to state what records Dr. First did _not_ take into consideration when Dr. First offered his medical opinion. Id. Defendant argues the ALJ considered Dr. First's opinion and found that it contradicted the opinions and findings provided by the substantial evidence in the record. (Def.'s Cross-Motion at 6.)

#### 1. _Legal Standard_

Ninth Circuit case law distinguishes among the opinions of

08cv1975

three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). Generally, more weight is given to the opinion of a treating physician. <u>Id</u>., [citing <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir. 1987)]. Medical opinions of a claimant's treating physicians are entitled to special weight and, if the ALJ disregards those opinions, "he must set forth specific legitimate reasons for doing so, and this decision must itself be based on substantial evidence." <u>Embrey v. Bowen</u>, 849 F.2d 418, 421 (9th Cir. 1988), citing <u>Cotton</u>, 799 F.2d at 1408.

A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the record. <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1157 (9th Cir. 2001).

### 2. *Analysis*

The ALJ rejected Dr. First's opinion because Dr. First "did not adequately consider the entire record, including objective findings of other physicians, as well as claimant's statements regarding his activities of daily living. The objective evidence in the record does not support the level of severity that Dr. First assigns." (Tr. at 17.) Specifically, the ALJ considered Plaintiff's treating physician, Dr. Fink's finding that Plaintiff's Addison's disease was under control and Dr. Morse's findings that Plaintiff's chest x-rays were clear. (Tr. at 18.) The ALJ found these opinions to be contrary to each other. (<u>Id.</u>) Consequently, the ALJ adopted

08cv1975

1  the findings of the medical expert Dr. Morse, a non-examining

2  physician who reported that Plaintiff was capable of work.

3      More weight is afforded to the opinion of a doctor who has

4  examined a claimant than to a doctor who has not. 20 C.F.R. §

5  404.1527(d)(1).   Here, Dr. First, Plaintiff's treating physician,

6  reported that Plaintiff was diagnosed with Addison's disease, chronic

7  fatigue, asthma, and osteoporosis secondary due to steroid use.  The

8  ALJ noted that Dr. Fink, an additional examining physician, reported

9  that Plaintiff's Addison's disease was under control with medication.

10 The ALJ considered this to conflict with Dr. First's diagnosis. (Tr.

11 at 17.)  However, Dr. Fink's opinion does not conflict with Dr.

12 First's report of Plaintiff's diagnosis of Addison's disease.  Dr.

13 First never opined that Plaintiff's Addison's disease was not under

14 control, rather he opined that Plaintiff suffered debilitating

15 fatigue and osteoporosis due to steroid medication used to treat the

16 disease. (Tr. at 263.)

17      Additionally, the ALJ notes that although Dr. First diagnosed

18 Plaintiff with asthma, yet Plaintiff's chest x-rays were clear.  (Tr.

19 at 17.)  Further, Dr. Polster, an examining physician, administered

20 a pulmonary function test and reported a moderate expiratory airflow

21 obstructive defect, which was partially reversible. (Tr. at 267.)

22 Contrary to what the ALJ found, Dr. Polster's objective medical

23 finding is not inconsistent with Dr. First's diagnosis of asthma.

24 The ALJ failed to provide specific, legitimate reasons supported by

25 substantial evidence in the record for rejecting the treating

26 physician's opinion.  The treating doctor's opinion is not contrary

27 to the substantial evidence in the record.  Therefore, Dr. First's

28 opinion should have been accepted.

1    **C. <u>Vocational Expert's Opinion</u>**

2         As discussed in previous the section, there is substantial

3    evidence in the record to support the restrictions reported by Dr.

4    First. The vocational expert opined that a person with restrictions

5    reported by Dr. First, which included no lifting over ten pounds, and

6    20 minute breaks every 1-2 hours, could not perform the full range

7    of medium, light or sedentary work. (Tr at 61-62.)  The vocational

8    expert opined that under the functional limitations provided by Dr.

9    First, Plaintiff would be unable to return to work.   (<u>Id.</u>)

10        Here, the ALJ committed legal error when he improperly

11   discredited Plaintiff's subjective symptom testimony, and the

12   testimony of two of Plaintiff's treating physicians.  Therefore, the

13   hypothetical question presented to the vocational expert should have

14   been based on the functional limitations offered by treating

15   physician Dr. First. The vocational expert testified that if

16   Plaintiff had a functional limitation offered by Dr. First, Plaintiff

17   would unlikely be able to sustain work because of his functional

18   limitation. (Tr. at 61-62.)  Therefore, it is clear from the record

19   that the ALJ would be required to find Plaintiff disabled if he had

20   properly credited Dr. First and Dr. Fink's opinions.

21        **D. <u>Relief</u>**

22        It is clear from a review of the record that substantial

23   evidence does not support the ALJ's findings. To the contrary,

24   substantial evidence supports the opposite conclusion. The AJL

25   discounted the opinions of two of Plaintiff's treating physicians and

26   the testimony of the Plaintiff himself. (Tr. at 17-18.)  Instead,

27   the ALJ credited the opinion of one doctor who did not examine

28   Plaintiff.  Two of Plaintiff's doctors, Dr. First and Dr. Fink, found

08cv1975

1   that Plaintiff's muscle and joint pain, and chronic fatigue limited

2   his functional abilities.  (Tr. at 197, 280.)   These physicians'

3   opinions are supported by Plaintiff's own testimony of pain and

4   fatigue.  (Tr. at 41.)

5         Crediting evidence and remanding for an award of benefits is

6   appropriate where:

7         (1) the ALJ has failed to provide legally sufficient
          reasons for rejecting such evidence,

8         (2) there are no outstanding issues that must be
          resolved before a determination of disability can be
          made and

9         (3) it is clear from the record that the ALJ would be

10        required to find the claimant disabled were such
          evidence credited.

11  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000)(quoting Smolen,
    80 F.3d 1292).

12        Plaintiff seeks reversal of the ALJ's decision and an award

13  of benefits.  Section 405(g) permits a court to enter a judgment

14  affirming, modifying, or reversing the Commissioner's decision.  42

15  U.S.C. § 405(g).  The reviewing court may also remand the matter to

16  the Social Security Administrator for further proceedings.  Id.  Upon

17  finding legal error, it is within the court's discretion whether to

18  remand the case or simply to award benefits.  Winans v. Bowen, 853

19  F.2d 643, 647 (9th Cir. 1988).

20        As previously noted, the five-step analysis requires a

21  claimant to demonstrate he is unable to perform his past relevant

22  work.  See Gomez v. Chater 74 F.3d 967,970 (9th Cir. 1996).  If the

23  claimant meets his burden, the burden shifts to the commissioner to

24  show there are other jobs in the national economy the claimant can

25  perform.  Id.  The ALJ's finding that Plaintiff could perform other

26  work based on the guidelines, and the incomplete hypothetical

27  question put forth to the vocational expert in the final step of the

28  analysis, was error.  Accordingly, this Court finds Plaintiff is

08cv1975

1   disabled and recommends the ALJ's decision be reversed and Plaintiff

2   be awarded benefits.

3                    **CONCLUSION AND RECOMMENDATION**

4          For the reasons set forth above, in considering the record as

5   a whole, this Court RECOMMENDS that the District Court GRANT

6   Plaintiff's Motion for Summary Judgment and award benefits to him.

7   Further, the Court RECOMMENDS that the District Court DENY Defen-

8   dant's Cross Motion for Summary Judgment.

9          This Report and Recommendation of the undersigned Magistrate

10  Judge is submitted to the United States District Judge assigned to

11  this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).

12         On or before May 19, 2010, any party may file written

13  objections with the Court and serve a copy on all parties.   The

14  document should be captioned "Objections to Report and Recommenda-

15  tion."

16         Any reply to the objections shall be filed and served on or

17  before June 18, 2010.   The parties are advised that failure to file

18  objections within the specified time may waive the right to raise

19  those objections on appeal of the Court's order.   See Turner v.

20  Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d

21  1153 (9th Cir. 1991).

22

23  DATED:  April 19, 2010

24

25                                _____

26                                Hon. William V. Gallo
                                  U.S. Magistrate Judge

27

28

                                  23                          08cv1975